Ilslet, J.
The plaintiffs, residents of Havre, France, purchased through their agent, John Gauche, of New Orleans, at Woodville, Miss., from E. Marx& Co., 59 bales of cotton, and from M. Simon & Co., 10 bales.
These purchases were made in the latter part of March, 1862, and the invoices in evidence are dated the 1st April, 1862.
The weight of the 69 bales, thus purchased, was 30,027 pounds, and the cotton was paid for.
Marx & Co. stored this cotton in the warehouse of Jacob Shlessinger, *492 at Woodville, on the 1st April, 1862, and Marx & Co., by a letter dated 2d April, 1862, advised Gauche thereof.
Invoices of the 69 bales of cotton, thus stood in Woodville for the 'account of the plaintiffs, with proof of ownership annexed, were deposited in the archives of the French Consulate in New Orleans, on the 6th "of April, 1862, and the French Consul certified the same to be French property.
This cotton remained stored in Schlessinger’s warehouse until some time ■in the year 1863, when the defendants, acting as the self-constituted agents 'of the owners, removed the cotton from the warehouse to a plantation some three miles distant, belonging to one Netterville, where they remained for a period of time, which the evidence does not determine.
' By a letter dated 26th July, 1864, the defendants informed Gauche that they still had control of the cotton at the place to which it had been ¥é’moved, and Marx therein tells Gauche that he has an offer for the cotton of twenty-five cents a pound, in Louisiana State Bank notes, and 'advises Gauche to authorize him to accept the offer, as “ I see no prospect of removing it.”
The letter concludes by requesting Gauche to instruct the writer what he shall do.
:: Gauche gave no authority to sell the cotton, and heard no more of it till informed by one Leob, that Marx had sold the cotton.
In December, 1865, the defendant had an interview with Gauche in New Orleans, and informed him that he had sold the cotton in question, but did not say to whom, or the price he had received for it.
Marx, the defendant, was brought into Oourt by personal service of citation, on the 20th January, 1866.
The plaintiffs claim their cotion, 30,027 pounds, or its value, stated and proved to be worth fifty cents per pound, its value when the suit was brought.
The defence set up is, 1st: a general denial; 2d, a denial that plaintiffs were the owners of the cotton; and 3d, plaintiff could not legally acquire property within the rebel lines, on the 1st April, 1862, and upon these issues the ease was tried in the Court below. After the cause had been submitted for decision, the defendant filed a plea of prescription of one ■year in bar of the action, which was x>roperly overruled by the Court below, as the action is evidently against a negoiiorwm. gestor in a quasi contract, and is governed by Article 3508, and not by Article 3501, C. C.
The District Court, having rendered judgment in favor of the plaintiffs for the value of the cotton as prayed for by them in the alternative, the defendant made an apx>lication for a new trial upon the ground of newly discovered evidence, which he based upon an affidavit extant upon the record.
This affidavit declares that defendant can prove by two witnesses, Loeb and Stewart, that the cotton sued for by the plaintiff was in part destroyed while being hauled from Woodville to Netterville’s, and that the only part of the same saved was thirteen bales, weighing 5,962 pounds, which was all that came into the possession of the defendant, and for which he can be held resxmnsible. No such defence as this was pleaded in the defendants’ answer; and a new trial will not be granted to prove what has not *493 been pleaded. Landry v. Banquin, 17 La. 84. Cox v. Bethaney, 10 La. 156.
Another ground was urged in support of the application for a new trial, to wit: that the judgment does not conform to the prayer of the plaintiffs’ petition. It was proved on the trial, that the sixty-nine bales which the defendants had taken possession of, had been sold by him, and gone out of his hands. A judgment for the delivery of the cotton would, therefore., have been nugatory.
This Court will not interfere when, as in the present case, the Court below has exercised a sound, legal discretion, in overruling an application for a new trial. 6 An. 753. 2 An. 265. 10 Bob. 57.
The plaintiffs’ title to and ownership of the cotton, its value when the suit was brought, and the defendants’ liability to the plaintiffs for that value, are clearly established, unless when the plaintiffs purchased the cotton they were not in a condition legally to acquire property within the rebel lines. The argument of the plaintiffs on this plea, set up by the defendant, meets the concurrence of this Court. They say, “the plaintiffs, French subjects, residents in France, bought on the 1st of April, 1862, through their agent, John Gauche, a resident of New Orleans, from Marx & Co., and Simon & Co., residents of Woodville, Miss., sixty-nine bales of cotton, then being in Woodville.
Both Woodville and New Orleans were, on the 1st April, 1862, within the rebel lines. New Orleans was captured and occupied by the Federal forces on the 25th of April, 1862, and Woodville not until the end of the war, in March or April, 1865.
At the date of the purchase a state of war existed, but both buyer and seller were on the same side of the hostile lines. It was not a traffic between enemies forbidden by the law of nations, nor by the President’s proclamations and the acts of Congress. There is no principle of the law of nations better settled, than that no traffic or commercial contract can lawfully subsist between the inhabitants of one or two belligerent States and those of the other [belligerent State. Kent’s Commentaries, vol, 1, pp. 74, 77.
The doctrine, respecting the illegality of any commercial intercourse between two nations at war, was extensively received and settled in the leading case of Griswold v. Waddington, 15 and 16 Johnson’s New York Beports. See also Scholefield v. Eichelberger, 7 Peters, 586. But this doctrine is not applicable to the contracts for the purchase of cotton involved in the present controversy. The proclamation . of the President of the United States of the 16th of August, 1861, is the authentic and official guide for the ascertainment of the geographical lines which separated the hostile parties during the late civil war and rebellion.
In that proclamation, President Lincoln declares, in pursuance of the 5th section of an act of Congress, approved July 13th, 1861, (12th U. S. Statutes at Large) that the inhabitants of eleven States named, (including Mississippi and Louisiana) are in a state of insurrection against the United States, and that all commercial intercourse between those States and their inhabitants, on the one side, and the citizens of other States, and other parts of the United States, on the other side, is unlawful, and will *494 remain unlawful until such insurrection shall cease, or has been suppressed. 12th U. S. Stat. at Large, 1262.
The words of the act of Congress, referred to in this proclamation, are as follows:
“ And thereupon” (the proclamation of the President) all commercial intercourse between the same (the proclaimed States) and the citizens of the rest of the United Slates shall cease, and be unlawful, so long as such condition of hostility shall continue. ” The difference of expression between the act of Congress and the President’s proclamation, is not material. Commercial intercourse between the citizens of Louisiana or resident citizens of France, on the one side, and citizens of Mississippi on the other, in the month of April, 1862, was, therefore, clearly not unlawful.
For the reasons by the District Court, and those now by us assigned, it is ordered, adjudged and decreed that the judgment of the District Court be and the same is hereby affirmed, at the costs of the appellant.
Rehearing refused.